STATE OF NEBRASKA, APPELLEE, V. DON D. RICE, APPELLANT.
435 N.W.2d 889

Filed February 17, 1989.    No. 87-1095.

Thomas R. Lamb and, on brief, Robert B. Creager, of Berry, Anderson, Creager & Wittstruck, P.C., for appellant.

Robert M. Spire, Attorney General, and Susan M. Ugai for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

BOSLAUGH, J.

After trial to a jury, the defendant, Don D. Rice, was convicted of attempted burglary and of criminal mischief causing a pecuniary loss in excess of $300. He was sentenced to imprisonment for 1 to 2 years on each count, the sentences to run concurrently. He has appealed and contends that the trial court erred in overruling his challenge to the array, in allowing him to be prosecuted on both counts, and in overruling his objections to testimony concerning the amount of the pecuniary loss.

The record shows that on March 2, 1987, the defendant proposed to Eugene Sell, an accomplice, that they burglarize the Curtis Mathes store in Lincoln, Nebraska. The defendant's plan was to go to the store in the defendant's van, break a window, return to the van, and then leave the premises. They would return later to see if anyone had discovered the break-in, and, if not, they would then enter the store and steal VCRs. Sell agreed to the plan, and the defendant drove to the store. Upon their arrival, the defendant handed a tire iron to Sell, who proceeded to throw it through a glass door of the store. After breaking the glass door, the men left the premises as planned. All of this was witnessed by Richard Aksamit, the owner and manager of a security company, who was driving an unmarked company car and patrolling for his company. Aksamit had seen the defendant's van pull into the Curtis Mathes parking lot and head toward the back of the building.

When the van left, Aksamit followed the van south on 48th Street and obtained the license number and a description of the vehicle. Aksamit then called the Lincoln police, who asked him to return to the Curtis Mathes store and wait in the parking lot. While waiting for the officers to arrive, Aksamit saw the defendant's van return and drive slowly past the business twice. Aksamit gave the police a description of the defendant's van, which was then stopped by other officers. When the van was stopped by police, Sell was in the passenger seat and the defendant was driving the van. Aksamit went to the place where the van had been stopped and identified the van and Sell as the person who had thrown the object through the door of the Curtis Mathes store. Police officers identified the defendant as the driver of the van.

The store manager, Joseph Turner, was notified of the break-in, and he came to the store. Turner saw that the glass door had been broken and found the tire iron which had been thrown through the door. Turner remained at the store and contacted Glass Contractors to replace the broken door. Carl Jarl Security Systems was contacted to reinstall the alarm which had been on the door prior to its being broken. As the manager of the Curtis Mathes store, Turner authorized payment of $246.32 to Glass Contractors for the repair of the door and

$122.84 to Carl Jarl Security Systems for reinstallation of the alarm system. Turner testified that both amounts were reasonable and that the pecuniary loss exceeded $300.

Before the defendant's trial began, there was an arraignment hearing for Sell in the same courtroom. Some of the prospective jurors arrived early and were present in the courtroom when Sell entered a plea of guilty to attempted burglary. Six of the persons who had been present during the arraignment of Sell were examined individually concerning their ability to serve on the jury. One of the persons examined was David Tilly, who served on the jury. After his examination was completed, he was passed for cause by defense counsel.

After the special voir dire examination had been completed, and just before the trial began, defense counsel made an oral motion to challenge the array. Apparently, the basis for the motion was the possibility that some member of the jury, during the trial, might recall something that he had heard or seen during the Sell arraignment which would prevent him from being a fair and impartial juror. This motion was overruled.

After the voir dire examination had been completed, defense counsel challenged Tilly and two other persons that he had passed for cause, stating that he was withdrawing his previous passes for cause. No further examination was conducted, and the effect of the challenge was to contend that the three persons challenged were incapable of serving on the jury as a matter of law. The challenges were overruled, and peremptory challenges were then exercised.

The record fails to show any error in overruling the challenges to the array or the challenge of Tilly for cause. The law does not require that a juror be totally ignorant of the facts and issues involved; it is sufficient if the juror can lay aside his or her impressions or opinion and render a verdict based on the evidence presented in court. *State v. Jacobs*, 226 Neb. 184, 410 N.W.2d 468 (1987); *State v. Bird Head*, 225 Neb. 822, 408 N.W.2d 309 (1987); *State v. Kern*, 224 Neb. 177, 397 N.W.2d 23 (1986). The competency of a juror is generally presumed, and the burden is on the challenging party to establish otherwise. Retention or rejection of a juror is a matter within the discretion of the trial court. *State v. Coffman*, 227 Neb. 149, 416 N.W.2d

243 (1987). See, also, *State v. Beasley*, 183 Neb. 681, 163 N.W.2d 783 (1969); *Medley v. State*, 156 Neb. 25, 54 N.W.2d 233 (1952).

At the special voir dire examination, Tilly stated that he could refrain from telling other jurors anything about what he had seen and heard in the courtroom; that he could set aside what he had heard and decide the case on the evidence presented at trial; that the fact the defendant's accomplice had pleaded guilty would not lead him to the conclusion that the defendant was also guilty; and that he could afford the defendant the presumption of innocence despite what he had heard. Furthermore, Sell testified in detail at the trial as to his involvement with the defendant and to his conviction of attempted burglary. The record fails to show that anyone present at the Sell arraignment heard anything that was not presented later at the trial through the testimony of Sell. The defendant's first assignment of error is without merit.

The defendant's second assignment of error is based on his contention that the defendant could not be prosecuted for both crimes since they involved but a single act, the breaking of the door. The defendant's argument that the second offense, criminal mischief, was a lesser-included offense of attempted burglary is incorrect.

To be a lesser-included offense, the elements of the lesser offense must be such that it is impossible to commit the greater without at the same time having committed the lesser. *State v. Arthaloney*, 230 Neb. 819, 433 N.W.2d 545 (1989).

The criminal mischief offense was complete once the door had been broken. The burglary charge involved an intent to enter and steal property of value. It was complete when the defendant returned to the scene but did not enter because the police had been notified and Aksamit was at the scene of the crime waiting for the police. Since the two crimes involved different elements, it was possible to commit burglary without committing criminal mischief, and the latter was not a lesser-included offense.

There was no double jeopardy, although the breaking of the door was a part of the plan for the burglary. In *State v. Stewart*, 219 Neb. 347, 353, 363 N.W.2d 368, 372 (1985), we stated:

> The constitutional prohibition against double jeopardy has no application where two separate and distinct crimes are committed as the result of one and the same act, because the constitutional proscription is directed to the identity of the offense and not to the act. Consequently, multiple punishments can be imposed for the same act without violating the double jeopardy provisions of the Constitutions, state and federal, where imposition of the multiple punishments is specifically authorized by state statute.

See, also, *State v. Cole*, 218 Neb. 1, 352 N.W.2d 154 (1984); *State v. Jackson*, 217 Neb. 332, 348 N.W.2d 866 (1984).

The third assignment of error relates to the testimony of Turner concerning the pecuniary loss resulting from the breaking of the door. Turner, as manager of the Curtis Mathes store, was competent to testify as to the actual cost of repairing the damage to the door. He further testified without objection that the cost of the repairs was reasonable.

The defendant contends that Turner's testimony was not admissible because he was not qualified as an expert witness.

Turner testified that, as the manager of the store, it was his responsibility to have the door repaired and he was authorized to incur that expense on behalf of the company. Thus, so far as the damage to the door was concerned, Turner was in the position of an owner and competent to testify as to the actual cost of repairs, which was the pecuniary loss sustained as the result of the breaking of the door. An owner of personal property is qualified by reason of the ownership relation to testify as to the value of the property. *Dawson v. City of Lincoln*, 176 Neb. 311, 125 N.W.2d 908 (1964); *Johnson's Apco Oil Co. v. City of Lincoln*, 204 Neb. 397, 282 N.W.2d 592 (1979).

Although not assigned as error, we have considered the sentences imposed by the trial court and find no abuse of discretion.

The judgment is affirmed.

AFFIRMED.

FAHRNBRUCH, J., concurs.